2L 369<br>6L 178

## A. T. STEWART et als. v. D. COCKRELL, et als.

DEED OF TRUST. *Not fraudulent when.* B. leased a hotel to C. for five years at an annual rent of $30,000, the sum of $2,500 to be paid monthly in advance, and the lease stipulated that if the lessee failed to pay any instalment at maturity and for three days thereafter, the lessor may at his option hold the lease forfeited, and re-enter and take possession without demand, and all instalments for rent from and after the next pay day after such re-entry to be released. Cotemporaneous with the lease a deed of trust was executed by C. to B. upon the hotel furniture to secure the rent evidenced by sixty notes, each for $2,500, and falling due on the first day of each month, beginning Dec. 1, 1868, and ending Nov. 1st, 1873. Upon a bill filed by the

24—VOL. 2.

creditors of C. to set aside the conveyance in trust as fraudulent in law: *Held*, the deed was good, B. having acted in good faith and without knowledge of C.'s financial embarrassment, and the time under the circumstances not being unreasonable.

### FROM SHELBY.

Appeal from the Second Chancery Court at Memphis. S. P. WALKER, Ch.

W. M. RANDOLPH for complainants.

HUMES & POSTON and McKISICK & TURLEY for defendants.

TURNEY, J., delivered the opinion of the court.

In the spring of 1868 Cockrell induced R. C. Brinkley, the owner of the property, to convert the building now known as the Peabody Hotel, but then constructed and used for storehouses, into a building to be used as a hotel. He proposed if the conversion could be made, to lease the property for a term of five years, at the annual rental of thirty thousand dollars, twenty-five hundred to be paid monthly in advance. Cockrell was an experienced hotel-keeper, and was understood to be a man of large means.

The terms of the lease were agreed upon, and after the work of conversion was completed, reduced to writing on the 20th of November, 1868. The cost of conversion was one hundred thousand dollars. To secure the payment of the rent a deed in trust was executed by Cockrell and his sons to James L. Goodloe, trustee, upon various articles of hotel furni-

ture.    That deed recites an indebtedness to Brinkley of $150,000, evidenced by sixty notes of $2,500 each, one falling due on the first day of each month, beginning 1st day of December, 1868, and ending Nov. 1, 1873, inclusive.    It provides that if Cockrell and sons fail to pay upon maturity, that for each default the trustee, after giving thirty days' notice, may sell as much of the furniture as may be necessary to pay the sum or sums due.    It is further agreed that the party of the first part (Cockrell and sons) may retain possession of all the property conveyed until default of payment.

The lease for five years made cotemporaneously with the deed in trust, in addition to a recital of the main stipulation in the deed, provides that no changes, alterations or additions shall be made upon the premises, that no waste shall be committed, no nuisance allowed, etc.    It is also contracted that if the lessees fail to pay any instalment at maturity and for three days thereafter, or shall assign or underlet, etc., the lessor may at his option hold the lease forfeited, and re-enter and take possession of the premises without demand, etc.    All instalments for rent from and after the next pay day after such re-entry to be released.

It appears in proof that D. Cockrell made the arrangement for leasing the hotel property for the benefit of his sons; that he intended as soon as they could manage the business without his assistance and experience, to retire from business; he informing Brinkley that he was comparatively free from debt, and

had enough to be comfortable without exerting himself the remainder of his days.

It is clear that Brinkley entered into the contract in good faith, believing Cockrell to be a man of large estate, and not embarrassed to any considerable extent with debt. Brinkley would not have changed the property into a hotel but for the security by trust deed of the rents agreed to be paid.

In July, 1870, the trustee took possession of the hotel and furniture because of default in payment of the rents. Previous to that time several efforts had been made to obtain the possession, but were defeated by injunction.

On the 17th of July, 1870, the lease was canceled by the written agreement of the parties. On the 10th and 11th August, 1870, the furniture was sold. The sale paid $15,674.16 of the rent due, leaving a balance of $19,161.82.

This bill was filed 22d July, 1869, seeking among other things to vacate the deed of trust and apply the proceeds of the sale of the property to the payment of debts due from Davis Cockrell and Cockrell & Sons to complainants. It is not insisted there was fraud in fact, but that there was fraud in law, in making and accepting the deed.

As we have seen, it is manifest Brinkley entered into the contract in entire good faith; that in order to its conversion he expended about $100,000; that he had known Davis Cockrell for at least twenty years, lived in the same community with him, and knew him to be an experienced hotel-keeper; that he

had good reason to believe, and never to disbelieve that he was financially in easy circumstances. It is equally clear that the only purpose of each party was to invest his means in an enterprise that promised profit to both.

Under the peculiar circumstances of this case, with no lack of such diligence to inform himself on the part of Brinkley as a reasonable man would employ in business transactions, the question recurs, was the taking of the deed a fraud in law upon existing and subsequent creditors of Brinkley, none of whom, it seems, had theretofore suspected either the solvency or integrity of Davis Cockrell? We think not. To so hold would be to determine that in all cases, before one can contract with another so as to bind property by express stipulation, he must be able to show that he exhausted all the sources of information as to the financial condition of the party pledging. Not only must he acquaint himself with the records of county, but must also acquaint himself with the private indebtedness of him with whom he is proposing to negotiate. We can see no good reason why the prudent business man who proposes to take care of himself may not do so, if he be strictly honest in the effort.

There is nothing in the record showing the value of the property conveyed, except the report of the sales in August, 1870. It is certain, however, that it by no means reached in value the amount of the debt undertaken to be secured. It was sufficient to have paid some of the monthly instalments, but lacked a large amount of paying those due at the time of

sale. So far as we can see from the record, Brinkley had neither more nor less faith in the ability of Cockrell to pay than did others who gave him credit. He was simply more cautious and provident in transactions with him.

The argument that the time allowed is unreasonably long, is answered by the case of *Bennett* v. *Union Bank*, 5 Hum., 512, where the same time for a less amount was given. That the property would depreciate by its use in a hotel, is not sufficient to vacate the deed. The purpose of the parties in so extensive an undertaking guarantees the keeping in repair of the furniture, otherwise the particular business must fail in the view of the lessees; besides, the same objection might be made to a lease or trust upon lands, as houses, barns, fences, etc., naturally depreciate by time, use and exposure.

As said by Judge Reese in the case cited, "We do not feel called on to be laboriously astute and subtle in search of hypotheses by which to discover that which began honestly might in the end be applied to dishonest uses. The contrary is our duty — to let it stand if it seems fair and honest."

Decree affirmed.